IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HERMIONE KELLY IVY WINTER, f/k/a David Allemandi, | : : : | |
| Petitioner, | : : | |
| v. | : : | Civ. Act. No. 17-1292-LPS |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : : : : | |
| Respondents.[1] | : : | |

### MEMORANDUM OPINION

Hermione Kelly Ivy Winter. *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

November 16, 2020
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and Amended Application (hereinafter collectively referred to as the "Petition") filed by Petitioner Hermione Kelly Ivy Winter ("Petitioner").[2] (D.I. 1; D.I. 10) The State filed an Answer in Opposition, to which Petitioner filed a Reply. (D.I. 19; D.I. 26) For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

Delaware State Police arrested and charged Petitioner on September 6, 2013 after Petitioner's six-year-old daughter disclosed to her mother that Petitioner had sexually assaulted her on multiple occasions when she was four and five. (D.I. 17-9 at 4-7) On April 10, 2014, Petitioner pled guilty to second degree rape and continuous sexual abuse of a child (as lesser included offenses of first degree rape). (D.I. 17-9 at 12-13) The Superior Court sentenced Petitioner as follows: (1) for the continuous sexual abuse of a child conviction, to twenty-five years of Level V incarceration (with credit for 216 days previously served), suspended after five years for twenty years of Level III probation; and (2) for the second degree rape conviction, to twenty-five years at Level V, suspended after fifteen years and successful completion of the Transitions Sex Offender Program for one year of Level IV confinement, followed by eight years of Level III probation. (D.I. 17-6 at 8-9) Petitioner did not appeal her convictions or sentences.

In July 2014, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 17-9 at 37-42)

---

[2]Petitioner changed her name to Hermione Winter on December 18, 2017, and now identifies as a woman. *See Winter v. State*, 191 A.3d 291 (Table), 2018 WL 3569960, at *1 (Del. Jul. 24, 2018); *Winter v. Mills*, 198 A.3d 724 (Table), 2018 WL 1475799, at *1 (D. Del. Mar. 26, 2018).

The Superior Court appointed counsel to represent Petitioner in the Rule 61 proceeding and, after reviewing the Rule 61 motion, defense counsel's Rule 61 affidavit, Petitioner's reply to the Rule 61 affidavit, and the State's response, the Superior Court denied the Rule 61 motion on October 2, 2015. (D.I. 17-6 at 17-28; D.I. 19 at 2) Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. See *Allemandi v. State*, 151 A.3d 448 (Table), 2016 WL 6648729 (Del. Nov. 9, 2016).

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by

2

demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v.*

3

*Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated

4

the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to decisions on merits).

## IV. DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, which asserts the following three grounds for relief: (1) defense counsel provided ineffective assistance by failing to have Petitioner evaluated by a psychiatrist prior to pleading guilty; (2) defense counsel forced Petitioner to enter a guilty plea; and (3) Petitioner is actually innocent of the charges and defense counsel failed to investigate evidence of her innocence. (D.I. 1; D.I. 10)

### A. Claim One: Failure to Obtain Psychiatric Evaluation

In Claim One, Petitioner contends that defense counsel provided ineffective assistance by failing to have Petitioner undergo a psychiatric evaluation before entering a guilty plea. Although not entirely clear, Petitioner appears to allege that a psychiatric evaluation would have revealed that she was not competent to decide between proceeding to trial or pleading guilty, and also that the results of the evaluation could have been used as mitigation evidence. (D.I. 1 at 5; D.I. 10 at 5) Petitioner presented this argument to the Delaware state courts in her Rule 61 proceeding. The Superior Court denied the Claim as meritless, and the Delaware Supreme Court affirmed that

5

decision "on the basis of the [Superior C]ourt's letter decision dated October 1, 2015." *Allemandi*, 2016 WL 6648729, at *1. Given these circumstances, Claim One will only warrant relief if the Superior Court's decision[3] was either contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them, or otherwise she risks summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding

---

[3]Given the Delaware Supreme Court's reliance on the Superior Court's judgment, in this Opinion the Court will reference the Superior Court's decision for all claims analyzed under § 2254(d)(1).

and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Superior Court decision was not contrary to *Strickland*; it correctly identified the *Strickland* standard applicable to Claim One. (D.I. 17-6 at 27; *see also Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")).

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When considering the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[4] *See Richter*, 562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument

---

[4]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

7

that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

A defendant has a due process right not to be tried while incompetent. *See Drope v. Missouri*, 420 U.S. 162, 171-72 (1975). Nevertheless, the fact that a person suffers from mental illness and is taking medication for that mental illness does not, on its own, provide a reason to doubt the person's competency to stand trial. *See Jermyn v. Horn*, 266 F.3d 257, 293 (3d Cir. 2001). A person is competent to stand trial when she has a "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding" and possesses "a rational as well as factual understanding of the proceedings against [her]." *Dusky v. United States*, 362 U.S. 402 (1960). "To be legally incompetent, [the person's] mental illness must have rendered [her] unable to consult with [her] attorney or understand the proceedings at the time of trial." *Cherys v. United States*, 552 F. App'x 162 (3d Cir. Jan. 9, 2014). "[E]vidence of a defendant's irrational behavior, [her] demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180.

In turn, it is well-settled that an attorney renders ineffective assistance by failing to inquire into a defendant's competency and failing to request a competency hearing if there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency. *See Jermyn*, 266 F.3d at 300. Determining whether there were such indicia of

8

incompetency that an attorney's failure to request a competency hearing fell below an objective standard of reasonableness necessarily requires examining what counsel did, and what facts counsel knew at the time that would bear on the issue of the defendant's competency to stand trial. *See Jermyn*, 266 F.3d at 300.

The following facts provide important background information relevant to the Court's analysis of Claim One.

On April 9, 2014, at final case review, Petitioner informed the Superior Court that she intended to enter a guilty plea. (D.I. 17-9 at 14-22) During the plea colloquy, however, Petitioner changed her mind, telling the Superior Court that she wanted a trial and that she was having difficulty understanding everything. The Superior Court continued the case until the next day. (*Id.*) On April 10, 2014, defense counsel informed the Superior Court that Petitioner was ready to enter her plea. (D.I. 17-9 at 24-25) Specifically, defense counsel stated:

> As the court can see and we discussed yesterday, [Petitioner] is being medicated by the Department of Corrections for some mental health disorders, and [s]he is taking Risperdal, Haldol by injection, and Paxil, and [s]he gets doses by the prison at 3:00 a.m. and at 7:00 p.m.
>
> Yesterday at about 3:00 p.m., when things unfolded during our colloquy, [s]he tells me it's a time of day when the medicine is wearing off and [s]he just was overwhelmed by the process.
>
> Both myself and my psycho-forensic evaluator . . . spent some time separately with [Petitioner] about what was going on. I think [s]he was just overwhelmed by the process, wanted an overnight to think about things.
>
> I spoke with [her] again this morning. [S]he is still desirous of Your Honor accepting this plea and going forward with sentencing today.

(D.I. 17-9 at 24-25)

9

The Superior Court confirmed with Petitioner that she did want to enter the plea and proceeded with the colloquy. (D.I. 17-9 at 25-26) Petitioner admitted that she was guilty of second degree rape and continuous sexual abuse of a child. (D.I. 17-9 at 25-27) When asked if she had any issues, problems, or complaints with defense counsel that might get in the way of entering her plea knowingly, voluntarily, and intelligently, Petitioner responded in the negative. (D.I. 17-9 at 27-32) The Superior Court accepted the plea as knowing, voluntary, and intelligent. Petitioner then stated: "It's been a long process and I'm getting what I deserve. I just want to apologize and say thank you, I'm at your mercy." (D.I. 17-9 at 34)

Thereafter, in her Rule 61 motion, Petitioner argued that "if my defense counsel . . . had let me be evaluated at the proper facility given my long history of psychiatric care and the use of psychotropic medications, she would have then known what mind frame I was in and whether or not I could properly decide on whether to take a plea or go to trial." (D.I. 17-9 at 41) After reviewing the case history, transcripts, and thorough explanations defense counsel provided in her Rule 61 affidavit, the Superior Court concluded that defense counsel made a reasonable strategic decision to forego a mental health evaluation. (D.I. 17-6 at 25-26) Specifically, the Superior Court opined:

> [W]hat the Court has before it is an attorney that recognized the seriousness of the case, spent appropriate time with [Petitioner], and did her due diligence. [Petitioner] informed the Court [s]he had no "issues, problems, headaches or complaints with [her] attorney or her staff."
>
> \* \* \* \*
>
> Ground Two is likewise denied based upon the Rule 61(g) affidavit of trial counsel. [Petitioner's] mental health issues were known to trial counsel. She brought in a psycho-forensic evaluator to assist in the defense. Specific strategy discussions about not getting an evaluation from the Delaware Psychiatric Center or a private expert were

10

> discussed. The downside of such an evaluation was significantly greater than the upside, *i.e.*, getting a guilty, but mentally ill plea.
>
> In the present motion, there is nothing from any doctor or expert to contradict the report of trial counsel or place [Petitioner's] competency on April 10, 2014 in question. A defendant is not entitled to a mental health evaluation just because [s]he wants one.
>
> This claim fails based upon the transcript and the Rule 61(g) affidavit of trial counsel. Nothing that has been placed before the Court by the defense proves this claim other than [Petitioner's] personal conclusions.
>
> \* \* \* \*
>
> In summary, [Petitioner's] complaints against [her] trial counsel have not been proven. [She] has not established that [counsel] objectively and professionally committed error by what she did or did not do, nor has [she] established any prejudice.

(D.I. 17-6 at 26)

The record in this case supports the Superior Court's explicit factual determination that defense counsel spent an appropriate amount of time with Petitioner to assess her competency to stand trial, as well as the Superior Court's implicit factual determination that there were not sufficient indicia of incompetence to give counsel reason to doubt Petitioner's competency. For instance, in her Rule 61 affidavit, defense counsel explained that she spent a great deal of time discussing the case with Petitioner and did not have any concerns about Petitioner's competency. Defense counsel noted: "During every encounter I had with [Petitioner], either in person, or in writing, [s]he engaged in thoughtful conversation about [her] case, asked appropriate questions, and seemed to understand the process and the issues in [her] case." (D.I. 17-9 at 47) Defense counsel explained that she met with Petitioner on several occasions and also communicated with Petitioner through written correspondence. During these interactions, defense counsel and Petitioner:

11

(1) discussed Petitioner's history of mental health issues; (2) discussed the medications Petitioner was taking; (3) discussed the evidence in Petitioner's case, "including the disclosures that had been made by the child;" (4) reviewed the audiotapes containing the Children's Advocacy Center interviews; (5) discussed strategic reasons to not pursue a mental defense in Petitioner's case; and (6) discussed defense counsel's concerns about having a full psychiatric report provided to the State and the Superior Court. (D.I. 17-9 at 46-50) Defense counsel described how she attempted to negotiate a "guilty but mentally ill plea" and why she believed pursuing that option was not in Petitioner's best interest. (D.I 17-9 at 46-50) Defense counsel also stated that she fully discussed the plea with Petitioner, and when she reviewed the plea offer again before the second plea colloquy on April 10, 2014, Petitioner did not express any desire to take her case to trial. (D.I. 17-9 at 44-46)

In contrast, Petitioner does not provide evidence that there were sufficient indicia to give defense counsel reason to doubt her competence to enter a guilty plea. As noted above, Petitioner's instant contention of incompetency is inconsistent with her conduct and statements she made during the plea colloquy that led to her guilty plea. Although Petitioner attempts to support her assertion of incompetency in this proceeding with a gender dysphoria report issued by the Gender Dysphoria Consultation Group[5] ("GDCG") in March 2018 containing some generalized information about her mental health history, the GDCG Report does not cast doubt on defense counsel's determination in 2014 that at that point Petitioner was competent to enter a guilty plea. (D.I. 26 at 6-17) As a general rule, retrospective competency determinations are disfavored, but may be permissible if the passage of time is not great and the mental health expert can consult

---

[5]The GDCG is comprised of clinical leaders in the medical and mental health departments of Connections and the Bureau of Correctional Healthcare Services of Delaware's Department of Correction ("DOC"). (D.I. 26 at 7) "The GDCG provides advice and guidance to the treatment teams in a collaborative effort to help [transgender] patients overcome their distress and move forward with their transitions in an individualized and responsible manner." (*Id.*)

contemporaneous medical reports. The 2018 GDCG Report provided by Petitioner does not even remotely address or assess Petitioner's competency to enter a guilty plea in 2014. Consequently, the Report does not affect the Superior Court's conclusion that defense counsel's decision to forego a psychiatric evaluation for Petitioner did not fall below an objective standard of reasonableness.

Petitioner has also failed to establish prejudice under *Strickland*, because she has not demonstrated a reasonable probability that she would have been found incompetent to enter a plea but for defense counsel's failure to have her undergo a psychiatric evaluation. To the extent Petitioner offers the 2018 GDCG Report to demonstrate prejudice, the Court has already explained that the Report is irrelevant for two reasons: (1) it does not address the issue of Petitioner's competency; and (2) it was issued five years after Petitioner entered her guilty plea.

Additionally, to the extent Petitioner asserts that defense counsel was ineffective because a psychiatric evaluation would have provided mitigating evidence for sentencing purposes, she has failed to satisfy either prong of *Strickland*. In her Rule 61 affidavit, defense counsel explained:

> In a nutshell, I had a concern that if a full [psychiatric] report was generated and the prosecutor and the [Superior] Court had a full picture of the facts of this case as well as the full details of [Petitioner's] life, that we might not be able to negotiate [her] sentence down to a term of years. I was concerned that in asking for a full blown psychiatric evaluation which is done by the State Hospital the report would go to the [Superior] Court and the prosecutor. I also thought that based on the communications that [the psycho-forensic evaluator] and I had with [Petitioner] that if I retained a private forensic mental evaluation on [her] that this report would not be helpful in terms of a legal defense.

(D.I. 17-9 at 49) Defense counsel asserted that she "discussed with [Petitioner] at great length why any resolution that involved a pre-sentence investigation was not in [her] best interest and [Petitioner] agreed." (D.I. 17-9 at 50) When concluding that defense counsel made a reasonable strategic decision to forego a mental health evaluation, the Superior Court noted "[t]he downside of

13

such an evaluation was significantly greater than the upside, *i.e.*, getting a guilty but mentally ill plea." (D.I. 17-6 at 26) Petitioner has not provided any argument or evidence to cast doubt on either conclusion. Additionally, given the disturbing nature of Petitioner's crimes – she raped her daughter on a number of occasions when the daughter was four and five years old – there was a very real possibility that the sentencing judge would have considered Petitioner a risk to public safety if provided with additional information about the crimes and Petitioner's mental health history. *See, e.g., Williams v. State*, 110 A.3d 550, 552 (Del. 2015).[6] The Superior Court could have sentenced Petitioner to anywhere between twelve and fifty years of incarceration. Defense counsel made a reasonable strategic decision to request immediate sentencing and present as little information to the Superior Court about the crimes and Petitioner's mental health history as possible. The Superior Court then did not exceed the twenty year sentence recommended by the State.

Based on the foregoing, the Court concludes that the Superior Court reasonably determined the facts in light of the evidence presented and reasonably applied clearly established federal law when denying Petitioner's instant ineffective assistance of counsel allegations. Accordingly, the Court will deny Claim One for failing to satisfy the standards in § 2254(d)(1) and (2).

---

[6]In *Williams*, 110 A.3d at 552, the Delaware Supreme Court held:

> In a non-capital sentencing hearing, where the judge must determine the length of the defendant's prison sentence, mitigation evidence plays a less central role. Because the defendant may eventually be released from prison, the sentencing judge must consider what sentence best promotes public safety. Mitigating evidence that allows a judge to have a better understanding for why the defendant committed the offense is less critical to the overall sentencing calculus in a context where the central consideration is how long the offender should be incapacitated not just as a fair retributive punishment, but to protect the public.

### C. Claims Two and Three: Procedurally Barred

In Claim Two, Petitioner contends that defense counsel yelled at her and threatened her after the first interrupted plea colloquy, thereby forcing Petitioner to enter a guilty plea on the next day, April 10, 2014. (D.I. 1 at 7) Although Petitioner raised Claim Two in her Rule 61 motion, she did not present it to the Delaware Supreme Court on post-conviction appeal. Therefore, Petitioner has not exhausted state remedies for Claim Two.

In Claim Three, Petitioner contends that review of Delaware Family Court files would have revealed she was actually innocent, because the victim's mother had previously threatened to ruin Petitioner's life. (D.I. 1 at 8) Relatedly, Petitioner asserts that defense counsel provide ineffective assistance by failing to investigate those threats and for failing to investigate the lack of physical evidence backing up the sexual abuse allegations. Petitioner did not raise the portion of Claim Three alleging ineffective assistance in her Rule 61 motion or on post-conviction appeal. Although she raised the actual innocence assertion in a motion for modification of sentence, she did not present that issue to the Delaware Supreme Court because she did not appeal the denial of the modification of sentence motion. Thus, Petitioner has not exhausted state remedies for Claim Three.

At this juncture, any attempt by Petitioner to raise Claims Two and Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and barred as second or successive under Rule 61(i)(2). Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1) and (2) apply in this case, any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claims Two and Three as technically exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

15

Petitioner appears to assert that she failed to present Claims Two and Three to the Delaware state courts because postconviction counsel refused to allege them in her Rule 61 motion. (D.I. 1 at 7-8; D.I. 10 at 7) In *Martinez v. Ryan*, 566 U.S. 1, 12, 16-17 (2012), the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding or there was ineffective assistance of counsel during the initial collateral proceeding, that the underlying ineffective assistance of trial counsel claim is substantial, and that he was prejudiced. *Id.* at 14-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability, *see Martinez*, 566 U.S. at 13. Significantly, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Id.* at 16. The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 11.

Here, *Martinez* does not excuse the default of the actual innocence argument portion of Claim Three, because that portion does not allege ineffective assistance of trial/plea counsel. Although Claim Two and the remaining portion of Claim Three do allege ineffective assistance on the part of trial/plea counsel, the Court concludes that *Martinez* does not provide cause because neither of Petitioner's assertions have "some merit." Petitioner's unsupported, conclusory, and self-

16

serving assertions do not cast doubt on the extremely thorough and valid explanations defense counsel provided in her Rule 61 affidavit. For instance, with respect to Claim Two, defense counsel's Rule 61 affidavit described in great detail the discussions she had with Petitioner concerning the possible alternatives to pleading guilty, the details of the plea offer, and the consequences of pleading guilty. (D.I. 17-9 at 44-46) With respect to Claim Three, defense counsel described how she and Petitioner "discussed a civil Family Court case with which [Petitioner] was involved and the private representation [Petitioner] had in connection with that matter. [S]he signed a release for me to able to obtain information from [her] civil lawyer." (D.I. 17-9 at 48) Defense counsel also described how she and Petitioner reviewed the tapes of the victim's interviews at the Children's Advocacy Center, and that the "child's second interview with the CAC contained some extremely graphic details of the abuse she endured at the hands of my client." (D.I. 17-9 at 50) After that review, Petitioner "agreed that if a jury heard the child's allegations that things would not go well for [Petitioner] at trial." (D.I. 17-9 at 48) In addition, the Court notes that the transcript of the plea colloquy on April 10, 2014 does not in any way indicate that Petitioner felt coerced to enter a guilty plea. For all of these reasons, the Court concludes that *Martinez* is inapplicable to excuse postconviction counsel's default of Claims Two and Three.

In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception cannot excuse Petitioner's default, because she does not assert any new reliable evidence of his actual innocence. Thus, for all of these reasons, the Court will deny Claims Two and Three as procedurally barred.

## V.     PENDING MOTIONS

During the pendency of this proceeding, Petitioner filed a Motion to Consolidate Cases (D.I. 31), Motion to Appoint Counsel (D.I. 34), Motion for Emergency Declaratory Order (D.I. 37), and

17

Motion for Emergency Temporary Restraining Order (D.I. 38). Given the Court's determination that the instant Petition does not warrant habeas relief, the Court will dismiss these Motions as moot. The Court also notes that the Motion to Consolidate is denied because the other cases which Petitioner wishes to consolidate are not cases filed pursuant to 28 U.S.C. § 2254.

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.